Shaucb:, C. J.
Some questions of pleading discussed in the briefs are immaterial in the view which we take of the meaning and effect of section 2837, Revised Statutes, regulating the issuing of municipal and other public bonds and limiting the amount of such issues. It is conceded in the petition that all the required steps have been taken for the issuance of the contemplated bonds in accordance with the provisions of the section, but claimed that the amount of the bonded indebtedness created and so to be created will exceed the maximum limit which the proviso of that section of the statute permits to be created or assumed for that purpose. The proviso by which the general assembly has limited the amount of bonds to be issued is as. follows: “Provided, however, that no * * * municipal corporation shall hereafter create' or assume an aggregate indebtedness of outstanding and unpaid bonds under the authority of this act in excess of eight per cent, of the total value-of all the ’ property in such corporation as listed and assessed for taxation.”
The section containing this limitation upon the municipal authority to issue bonds was enacted April 29,1902. The petition does not allege that the contemplated issue of bonds if added to all that have been issued by the city of Tiffin since the passage of the act will exceed eight per cent, of the value of all the property within the city as listed and assessed for taxation. It is conceded that it will not. The. view urged by counsel for the defendants in error and taken by the circuit court is stated by it as follows: “In determining whether a municipal corporation has reached or exceeded the limit of its bonding capacity, the statute contemplates the aggregate *223 bonded indebtedness whether issued before or since said enactments, and if such aggregate equals or exceeds the extreme eight per cent, limit above noted, then no further bonds may be issued until said aggregate has been'reduced below said limit.”
This view is stated at length in the opinion and it is said that the limitation cannot be confined to bonds to be issued after the passage of the act because of the necessity imposed by a familiar canon of interpretation of giving effect to all the terms employed in the act, and that however clearly a prospective operation only might be indicated by the words “hereafter create,” former issues of bonds must be taken into account because the provision is that no municipality may “hereafter create or assume an aggregate indebtedness,” etc. Lexicography is invoked to show that within the authorized meaning of the word “assume” its use in the connection requires that previously created indebtedness should be taken into consideration in determining whether the authorized limit has been reached. This is said to receive support from the'consideration that a liability .may not be incurred by a municipality for any but municipal purposes. In the opinion it is said that “the word ‘assume’ cannot mean to create a new debt for it is used in the alternative with the word ‘create,’ to-wit, ‘create or assume.’ It may not mean to adopt or take up the debt of some other person or corporation for that does not come within the scope of the powers Conferred upon municipalities by law. It must, therefore, if it means anything, have reference only to the indebtedness of the corporation itself existing prior to the enactment of the eight per cent, limitation. ” We are not likely to ascertain the intention of the legislature if we *224 assume that it used the word in an occult or obscure sense though with reference to a very familiar subject and in a very familiar connection. In the sense of the word with which daily use has made us familiar the debt which one assumes was contracted by another. One may continue to owe a debt which he has previously created but he does not assume it. Nor is the conclusion of the circuit court supported by the proposition that a municipality may not assume a debt which another has created. It may for municipal purposes acquire lands which are subject to mortgage or other liens and assume a valid obligation to discharge them. In the provisions of the municipal code relating to the annexation of adjoining villages there is the express provision that the debt of the annexed territory shall be ascertained and apportioned and the proper proportion thereof “shall be assumed and paid by the city on the annexation of the territory aforesaid.” Ellis’ Municipal Code, page 39. We do not find in brief or opinion any reason for regarding the words of the statute as used in any but their ordinary sense. Thus regarding the words used at the date of the act we are not permitted to conclude that the indebtedness theretofore created or assumed was intended to be considered as a part of an indebtedness which might thereafter be created or assumed.
If the language of the statute were so doubtful as to make it a proper subject of interpretation, a very suggestive consideration favoring the conclusion reached by the court of common pleas would be found in the fact, shown by public records and doubtless known by the members of the general assembly, that at the time of the passage of the act many municipalities of the state had an outstanding and *225 unpaid bonded indebtedness exceeding eight per cent, of the total value of all the property within their limits as listed and assessed for taxation.

Judgment of the circuit court reversed and that of the common pleas affirmed.

Price, Crew, Summers, Spear and Davis, JJ., concur.